GEOFFREY GRABER (SBN 211547)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
ggraber@cohenmilstein.com

ERIC KAFKA (*pro hac vice* forthcoming)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
ekafka@cohenmilstein.com

JOSEPH P. BRENT (SBN 214459)
MICHAEL KIPP MUELLER (SBN 299984)
**BRENT & FIOL, LLP**
117 E. Colorado Blvd, Suite 465
Pasadena, CA 91105
Telephone: (626) 240-4850
Facsimile: (415) 373-4420
jbrent@brentfiol.com
kmueller@brentfiol.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE**,** individually and on behalf of others similarly situated, | CASE NO. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | CLASS ACTION |
| META PLATFORMS, INC. | DEMAND FOR JURY TRIAL |
| Defendant. | |

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

PARTIES ............................................................................................................... 2

JURISDICTION .................................................................................................... 3

FACTUAL ALLEGATIONS ................................................................................ 3

    A.      Facebook Induces Companies to Use the Meta Pixel, Which "Allows Facebook to be a Silent Third-party Watching Whatever You're Doing." ................. 3

    B.      Facebook Used The Facebook Pixel To Intercept Plaintiff And Class Members' Communications With Their Healthcare Providers. ................................. 5

    C.      Facebook Breached Its Contract with Facebook Users ................................ 8

    D.      Facebook Intentionally Intercepted Plaintiff And Class Members' Communications With Their Healthcare Providers In Order To Make Money. .......... 9

    E.      Plaintiff Doe's Experiences. ...................................................................... 11

CLASS ALLEGATIONS ................................................................................... 12

CAUSES OF ACTION ....................................................................................... 15

    First Cause Of Action - Breach Of Contract ............................................... 15

    Second Cause Of Action - Breach Of Implied Covenant Of Good Faith And Fair Dealing ..................................................................................................... 17

    Third Cause Of Action - Invasion Of Privacy ............................................. 18

    Fourth Cause Of Action - Intrusion Upon Seclusion ................................... 21

    Fifth Cause Of Action - Violation Of The California Invasion Of Privacy Act ................... 23

    Sixth Cause Of Action - Violation Of The Federal Wiretap Act .................. 26

    Seventh Cause Of Action - Violation Of The Comprehensive Computer Access And Fraud Act ................................................................................................. 28

    Eighth Cause Of Action - Violation Of California Unfair Competition Law ................... 29

    Ninth Cause Of Action - Quantum Meruit To Recover Sums Had By Unjust Enrichment ................................................................................................... 30

PRAYER FOR RELIEF ...................................................................................... 31

JURY TRIAL DEMAND .................................................................................... 32

i

Plaintiff Doe, individually, and on behalf of all others similarly situated, hereby files suit against Meta Platforms, Inc. and alleges the following:

**INTRODUCTION**

1.      Defendant Meta Platforms, Inc., f/k/a, Facebook, Inc. (hereinafter "Meta" or "Facebook") is widely known as the world's largest social media company.

2.      Facebook has been widely criticized for a business model that appropriates the data provided in user profiles and user pages, surveils users while they are on the Facebook platform, and even engages in efforts to manipulate users' emotions on small and large scales.

3.      Less well known, however, is that for more than a decade, Facebook has used a tracking pixel – known as the Meta Pixel -- to track Facebook users off the Facebook Platform. The Meta Pixel tracks what actions Facebook users take on websites that have installed the Meta Pixel and sends that information to Facebook.

4.      Thus, the Meta "pixel allows Facebook to be a silent third-party watching whatever you're doing." [1]

5.      Recently, the Markup revealed that Facebook uses the Meta Pixel to engage in unreasonable and intrusive conduct prohibited by law. Facebook is using the Meta Pixel to intercept communications between patients and their healthcare providers.

6.      On June 16, 2022, the Markup published an article exposing that the Meta Pixel was "installed on many hospitals' websites" and "has been collecting patients' sensitive health information – including details about their medical conditions, prescriptions and doctor's appointments – and sending it to Facebook." [2]

7.      Facebook invaded the privacy of millions of Americans. This is an egregious breach of social norms. Public polling shows that, "[n]inety-seven percent of Americans believe that

---

[1] *Facebook spies on us but not by recording our calls. Here's how the social network knows everything*, Jefferson Graham, USA Today, https://www.usatoday.com/story/tech/2020/03/04/facebook-not-recording-our-calls-but-has-other-ways-snoop/4795519002/ (last visited Aug. 11, 2022)

[2] *Facebook is Receiving Sensitive Medical Information from Hospital Websites,* The Markup, https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites (last visited Aug. 11, 2022)

doctors, hospitals, labs and health technology systems should not be allowed to share or sell their sensitive health information without consent." [3]

8.      Facebook's actions also breached its contract with users. Facebook promised users that Facebook "require[s]" other websites to have the "lawful rights to collect, use, and share your data before providing any to us" through the Meta Pixel. Yet, Facebook failed to require that hospitals and healthcare providers gain the necessary patient authorizations required by Health Insurance Portability and Accountability Act ("HIPAA") before sharing patient protected health information with Facebook.

9.      Facebook violated the privacy of its users because it made money doing so. Facebook allows and encourages healthcare providers to install the Meta Pixel on their websites, even though the type of information collected by the Meta Pixel on a healthcare provider website will foreseeably include protected health information. Facebook then earns additional revenue selling advertising space to healthcare providers who target audiences based on data containing protected health information, collected through the Meta Pixel.

10.      Plaintiff Doe has filed this putative class action to hold Facebook accountable. Plaintiff brings nine legal claims behalf of the class. Plaintiff Doe seeks monetary damages and an injunction that will stop Facebook from continuing its serious violation of the medical privacy of millions of Americans.

**PARTIES**

11.      Plaintiff Doe is a citizen and resident of California, over the age of eighteen years. Plaintiff resides in Los Angeles County, California.

12.      Defendant Meta Platforms, Inc. is incorporated in Delaware, and its principal place of business is 1 Hacker Way, Menlo Park, CA 94025.

13.      Defendant Meta Platforms, Inc. is formerly known as Facebook, Inc.

---

[3] *Poll: Huge majorities wants control over health info,* Healthcare Finance, https://www.healthcarefinancenews.com/news/poll-huge-majorities-want-control-over-health-info (last visited Aug. 11, 2022)

CLASS ACTION COMPLAINT

**JURISDICTION**

14.    This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class of Plaintiffs is a citizen of a state different from the Defendant.

15.    Pursuant to 28 U.S.C. § 1331, this Court has subject matter jurisdiction over the federal claim in this action – the Federal Wiretap Act, 18 U.S.C. § 2510, *et. seq.*

16.    This Court also has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the state law claims form part of the same case or controversy as those that give rise to the federal claim.

17.    This Court has personal jurisdiction over Defendant Meta Platforms, because Meta Platforms is headquartered in California, and conducts business in the state of California.

18.    This Court has personal jurisdiction over Defendant Meta Platforms because of its continuous and systematic business contacts with the State of California.

19.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in, were directed to, and/or emanated from this District.

20.    Venue is also proper because Facebook's Terms of Service require that claims be resolved "exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County."[4]

**FACTUAL ALLEGATIONS**

A.    **Facebook Induces Companies to Use the Meta Pixel, Which "Allows Facebook to be a Silent Third-party Watching Whatever You're Doing."**

21.    As Facebook states on its' website, "The Meta Pixel is a snippet of JavaScript code

---

[4] *Terms of Service*, Facebook, https://www.facebook.com/terms.php (last visited Aug. 11, 2022)

3

that allows [companies] to track visitor activity on your website."[5]

22.    Facebook further explains, "Once you've set up the Meta Pixel, the Pixel will log when someone takes an action on your website…The Meta Pixel receives these actions, or events, which you can view on your Meta Pixel page in Events Manager."[6]

23.    On information and belief, when a person takes an action on a website with the Meta Pixel, the Pixel simultaneously transmits that information to Facebook. The information reaches Facebook while the communication between user and website is still occurring.

24.    Thus, the Meta "pixel allows Facebook to be a silent third-party watching whatever you're doing."[7]

25.    Facebook pushes advertisers to install the Meta Pixel. Facebook tells advertisers that the Meta Pixel "can help you better understand the effectiveness of your advertising and the actions people take on your site, like visiting a page or adding an item to their cart."[8]

26.    Facebooks tells advertisers that the Meta Pixel will improve their Facebook advertising, including by allowing them to "optimize the delivery of [their] ads" and "create custom audiences."[9]

27.    Facebook also posts "case studies" on its website about the successes that advertisers have achieved due to installing the Meta Pixel on their websites.[10]

28.    Facebook provides advertisers with step-by-step instructions for setting up and installing the Meta Pixel on their website, so that companies can add the Meta Pixel to their website

[5] *Meta Pixel*, Meta Pixel for Developers, https://developers.facebook.com/docs/meta-pixel/ (last visited Aug. 11, 2022)

[6] *About Meta Pixel*, Meta Business Help Center, https://www.facebook.com/business/help/742478679120153?id=1205376682832142 (last visited Aug. 11, 2022)

[7] *Facebook spies on us but not by recording our calls. Here's how the social network knows everything*, Jefferson Graham, USA Today, https://www.usatoday.com/story/tech/2020/03/04/facebook-not-recording-our-calls-but-has-other-ways-snoop/4795519002/ (last visited Aug. 11, 2022)

[8] *Meta Pixel: Measure, Optimize & Retarget Ads on Facebook & Instagram,* Meta for Business, https://www.facebook.com/business/tools/meta-pixel (last visited Aug. 11, 2022)

[9] *Id.*

[10] *Id.*

without a developer.[11]

29.     Facebook is able to link the data that it receives from the Meta Pixel with the profiles of Facebook users.

30.     The Meta Pixel thus enables Facebook to sell more advertisements and earn more revenue.

31.     Meta Pixel data is used to create "custom audiences" for Facebook advertisers.[12] Facebook advertisers can use Pixel-collected data to target their advertisements at "custom audiences" of Facebook users who previously took certain actions on their website.  Facebook advertisers can also use their custom audiences to create "lookalike audiences" who share similar qualities to the members of the custom audiences.[13] Facebook earns substantial revenue selling to advertisers who use custom audiences and lookalike audiences.

32.     Facebook aggregates Meta Pixel data, along with other information to generate profiles of its users.[14] Facebook then lures advertisers to its platform by providing advertisers with the ability to target their ads based on these robust user profiles. Because of the Meta Pixel, advertisers can target Facebook users, in part, based on users' actions on non-Facebook websites. Facebook earns substantial revenue from advertisers based on the targeting capabilities that Facebook offers.

**B.      Facebook Used the Facebook Pixel to Intercept Plaintiff and Class Members' Communications with Their Healthcare Providers.**

33.     A June 16, 2022 article by the Markup revealed that the Meta Pixel was "installed on

---

[11] *Id.*

[12] *Custom Audiences - Meta Pixel*, Meta for Developers, https://developers.facebook.com/docs/meta-pixel/implementation/custom-audiences (last visited Aug. 11, 2022)

[13] *About lookalike audiences,* Meta Business Help Center, https://www.facebook.com/business/help/164749007013531?id=401668390442328  (last visited Aug. 11, 2022)

[14] *A Complete Guide to Facebook Tracking for Beginners*, David Vranicar, Oberlo, https://www.oberlo.com/blog/facebook-pixel (last visited Aug. 11, 2022)

CLASS ACTION COMPLAINT

many hospitals' websites" and "has been collecting patients' sensitive health information – including details about their medical conditions, prescriptions and doctor's appointments – and sending it to Facebook."[15]

34. The Markup found that the data collected by the Meta Pixel (and sent to Facebook) "is connected to an IP address – an identifier that's like a computer's mailing address and can generally be linked to a specific individual or household…"

35. The Markup tested the websites for 100 American hospitals to determine if they contained the Meta Pixel.

36. On 33 hospital websites, the Markup found that the Meta Pixel was sending data to Facebook when patients scheduled doctors' appointments. The data is connected to an IP address that can generally be linked to a specific individual or household.

37. As shown below, UCLA Reagan Medical Center was one of the hospitals where the Meta Pixel was found on the appointment scheduling page[16]:

---

[15] *Facebook is Receiving Sensitive Medical Information from Hospital Websites,* Todd Feathers et al., The Markup, https://themarkup.org/pixel-hunt/2022/06/16/facebook-is-receiving-sensitive-medical-information-from-hospital-websites (last visited Aug. 11, 2022)

[16] *Id.*

CLASS ACTION COMPLAINT

## A Third of Top Hospitals' Websites Sent Patient Data to Facebook

The Markup found 33 of Newsweek's top 100 hospitals in the country sending sensitive data to Facebook via the pixel. Data accurate as of June 15, 2022.

🔍 Search in table                                                    Page 1 of 20  →

| Hospital | Pixel tracking found on appointment scheduling page | Pixel tracking removed from appointment scheduling page after being contacted by The Markup | Hospital comment |
|---|---|---|---|
| Johns Hopkins Hospital | Yes | No | Did not respond |
| UCLA Reagan Medical Center | Yes | Yes | Declined to comment |
| New York Presbyterian Hospital | Yes | No | Did not respond |
| Northwestern Memorial Hospital | Yes | No | Link |
| Duke University Hospital | Yes | No | Did not respond |

Source: Newsweek, The Markup · Get the data

38.    The Markup found that the information provided by the hospital appointment scheduling pages to Facebook through the Meta Pixel included the name of the doctor, the medical condition for which the patient sought treatment, the doctor's field of medicine, and the patients' first name, last name, email address, phone number, zip code, and city of residence.

39.    The Markup also identified seven health systems that had installed the Meta Pixel inside their password-protected patient portals. For those health systems, the information provided to Facebook through the Meta Pixel included the names of the patients' medications, descriptions of their allergic reactions, and details about their upcoming doctor's appointments.

CLASS ACTION COMPLAINT

**C.    Facebook Breached Its Contract with Facebook Users.**

40.    Facebook users have a binding written contract with Meta.

41.    Facebook users' binding contract with Facebook includes the Meta Terms of Service and Meta Data Policy.

42.    Meta's Terms of Service incorporates the Meta Data Policy. Facebook states in its Terms of Service, "You can learn about how we collect and use your data in our Data Policy."

43.    From approximately April 2018 to at least June 15, 2022, Facebook's Data Policy promised users that Facebook "require[s] each of these partners to have lawful rights to collect, use and share your data before providing any data to us."

44.    In the Meta Data Policy, Facebook defined Partners to include, "Advertisers … who can send us information through … the Meta pixel."

45.    As explained below, healthcare providers did not have the lawful right (or any right) to share Facebook users' "protected health information" with Facebook because they are covered entities under the Health Insurance Portability and Accountability Act's ("HIPAA") Privacy Rule. *See* 45 CFR § 160.103.

46.    For example, UCLA Reagan Medical Center is a covered entity under HIPAA.

47.    Pursuant to the HIPAA Privacy Rule, with limited exceptions, a covered entity may not use or disclose protected health information without a valid authorization from the patient. *See* 45 CFR §164.508(a)(1),(3).

48.    There is no exception or requirement that allows covered entities to disclose protected information to social media companies for marketing purposes, without a valid authorization from the patient.

49.    The data transmitted from healthcare providers to Facebook through the Facebook Pixel includes "protected health information" because it is "individually identifiable health information" that "(1) Is created or received by a health care provider, health plan, employer, or health care clearinghouse; *and* (2) Relates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; *and* [3] (i) That identifies the individual; *or*

8

(ii) With respect to which there is a reasonable basis to believe the information can be used to

identify the individual." (emphasis added). *See* 45 CFR § 160.103.

50.     Facebook materially breached its contract with its users by failing to require that

hospitals and healthcare providers gain the necessary patient authorizations before sharing any

patient protected health information with Facebook.

51.     Facebook materially breached its contract with its users by failing to require that

hospitals and healthcare providers submit records of the necessary patient authorization to Facebook

before sharing any patient protected health information with Facebook.


**D. Facebook Intentionally Intercepted Plaintiff and Class Members' Communications**

**with Their Healthcare Providers in Order to Make Money.**

52.     As demonstrated by Facebook's course of conduct and knowledge, Facebook intends

to induce healthcare providers to install the Meta Pixel, collect patient medical data, and share that

data with Facebook without authorization.

53.     Facebook engages in this reprehensible scheme in order to make money.

54.     Facebook actively encourages healthcare companies and healthcare providers to

advertise on Facebook. Facebook promotes itself as a great platform for healthcare company

advertisements.[17]

55.     Facebook actively encourages healthcare providers to install the Meta Pixel on their

websites, even though the type of information collected by the Meta Pixel on a healthcare provider

website will foreseeably include HIPAA-protected information.

56.     Facebook actively encourages healthcare providers to create custom audiences and

lookalike audiences based on data they have collected from the Meta Pixel, even though that data

will foreseeably include HIPAA-protected information.

57.     For example, Facebook publishes guidance for brands in the health and

---

[17] *Facebook for Health Brands: Ads & Marketing Solutions | Meta for Business*, Facebook for Health Brands: Ads & Marketing Solutions | Meta for Business (last visited Aug. 12, 2022)

pharmaceutical industry (which includes healthcare providers).[18] As seen in the image below, part of Facebook's 2022 guidance for health advertising tells healthcare companies that targeting "Lookalikes of Meta Pixel" created the best results.



**Lookalike Audiences were the most cost-efficient in 86% of all studies. But "seed audience" matters.[1]**

Lookalikes of website visitors were the most cost-efficient, followed by Lookalikes of video viewers and Lookalikes of Facebook page engagers.

Across four of the fourteen split tests, Lookalikes, of Meta Pixel signals vs. Lookalikes of prior ad engagers were tested.

PHM found that

## 5%

Lookalikes of Meta Pixel signals drove the lowest-cost impressions, highest volume of actions, lowest cost per result and highest result rate.[1]

Lookalikes of video viewers and page engagers also out-performed legacy health interest segments

## 66%

of the time they were tested, but were consistently more expensive than Meta Pixel-based Lookalike Audiences.[1]

58.   Facebook makes more money from this scheme.

59.   First, Facebook earns additional revenue selling advertisements to healthcare providers who target custom audiences and lookalike audiences based on data containing protected health information, collected through the Meta Pixel.

60.   Second, Facebook earns additional revenue because healthcare providers buy more Facebook advertisements due to the health care providers being able to share protected health information with Facebook without authorization.

---

[18] *Id.*

CLASS ACTION COMPLAINT

61.     Third, Facebook saves money, and thus earns unjust profits, by refusing to spend money on systems and procedures that would stop healthcare providers from sharing protected health information with Facebook without authorization.

62.     Facebook's intent – for healthcare providers to share patient data with Facebook without authorization – is also revealed by Facebook's failure to implement a system that automatically suspends healthcare providers that transmit patient protected health information to Facebook through the Meta Pixel.

63.     Facebook's intent is also revealed by its failure to require that hospitals and healthcare providers submit records of the necessary patient authorization to Facebook before sharing any patient protected health information with Facebook.

**E.     Plaintiff Doe's Experiences.**

64.     Plaintiff Doe resides in Los Angeles County, California.

65.     Plaintiff Doe created a Facebook.com account in approximately 2010. Plaintiff Doe's Facebook.com account is still active.

66.     In 2021, Plaintiff Doe's contract with Facebook stated that Facebook "require[s] each of these partners to have lawful rights to collect, use and share your data before providing any data to us."

67.     In 2021, UCLA Health sent an e-mail to Plaintiff Doe encouraging her to schedule medical appointments online.

68.     In February or March of 2021, Plaintiff Doe scheduled at least two medical appointments online through UCLA Health for medical services rendered to her at UCLA Reagan Medical Center.

69.     When Plaintiff Doe scheduled those medical appointments online, she submitted information that included the type of medical treatment that she sought.

70.     Plaintiff Doe believed that her communications with UCLA Health and UCLA Reagan Medical were confidential and that those communications would not be shared with third parties. Plaintiff Doe's expectations were reasonable.

71.     Plaintiff Doe believed that the information that she submitted to UCLA Health and UCLA Regan Medical Center in scheduling her appointments online would be confidential and that it would not be shared with third parties. Plaintiff Doe's expectations were reasonable.

72.     Plaintiff Doe did not authorize UCLA Health or UCLA Reagan Medical Center to share any of their communications or medical appointment scheduling information with Facebook.

73.     Plaintiff Doe did not consent to Facebook intercepting her communications (or medical appointment scheduling) with UCLA Health or UCLA Reagan Medical Center.

74.     Plaintiff Doe did not expect that Facebook would intercept her communications (or medical appointment scheduling) with UCLA Health or UCLA Reagan Medical Center.

75.     As the Markup revealed, the Facebook Pixel was installed on UCLA Reagan Medical Center's appointment scheduling page, and the Facebook Pixel sent the information submitted by the patient on the UCLA Reagan Medical Center's appointment scheduling page to Facebook.

76.     Plaintiff Doe's protected health information – including the medical treatment that Plaintiff Doe sought – was thus intercepted by the Facebook Pixel and sent to Facebook.

77.     Plaintiff Doe was surprised to learn in the summer of 2022 that Facebook intercepted her communications with UCLA Reagan Medical Center, including the information that she submitted on the appointment scheduling page.

78.     Plaintiff Doe believes that her privacy has been violated by Facebook.

## CLASS ALLEGATIONS

79.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

80.     Pursuant to Federal Rule of Civil Procedure 23(b)(3), Plaintiff asserts claims on behalf of the following "Class":

> All persons who communicated with, or submitted information to, a healthcare provider online on a website or application where the Meta Pixel was installed.

81.     Excluded from the Class are Defendant, any entity in which the Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, and subsidiaries. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

82.     This action has been brought and may properly be maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23(b)(3). Plaintiff seeks to represent an ascertainable Class, as determining inclusion in the class can be done through Facebook's own records and/or the records of third parties.

83.     Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded, divided into subclasses, or modified in any other way.

84.     Although the precise number of Class Members is unknown and can only be determined through appropriate discovery, the 33 hospitals that the Markup found sending patient appointment details to Facebook collectively reported more than 26 million patient admissions and outpatient visits in 2020 alone. Plaintiff thus believes that the proposed Class is so numerous that joinder of all members would be impracticable.

85.     Questions of law and fact common to the putative Class predominate over questions affecting only individual members, including *inter alia*:

      a.     Whether Facebook has a binding contract with its Class Members;

      b.     Whether Facebook breached the provision in its contract with Class Members that states that Facebook will require "each of these partners to have lawful rights to collect, use and share your data before providing any data to us."

      c.     Whether Facebook failed to act in good faith in performing under its contract with Class Members;

      d.     Whether Class Members possess a legally protected interest in their patient medical data;

      e.     Whether Class Members maintained a reasonable expectation of privacy when providing their patient medical data to their healthcare providers and when

13

communicating with their healthcare providers online;

    f.    Whether Facebook's actions, as described above, constituted a serious invasion of privacy that was an egregious breach of social norms, such that the breach was highly offensive to a reasonable person; and

    g.    Whether Class Members are entitled to damages and/or restitution, and if so, the method of computing damages and/or restitution.

86.    Plaintiff is a member of the putative Class. The claims asserted by Plaintiff in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendant and the relief sought is common.

87.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members, as her interests are coincident with, and not antagonistic to, the other Class Members.

88.    Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff's counsel has experience litigating some of the largest and most complex consumer class actions, including numerous consumer class actions in the Northern District of California.

89.    Certification of the Class is appropriate pursuant to Fed. Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action it would be highly unlikely that the members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected recovery.

90.    A class action is a superior method for the adjudication of the controversy in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

91.    A class action is also superior because all of the Class Members claims arise under

14

federal law and California law. Regardless of their residence, all class members' claims arise under California law because Facebook's Terms of State include a choice of law provision, stating, "You also agree … that the laws of the State of California will govern these Terms and any claim, cause of action, or dispute without regard to conflict of law provisions."

92.     In the alternative, the Class should be certified pursuant to Federal Rule of Civil Procedure 23(b)(2) because:

    a.  The prosecution of separate actions by the individual members of the proposed class would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Facebook;

    b.  The prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

    c.  Facebook has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

(Asserted By Plaintiff Doe On Behalf Of The Class)

93.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

94.     Plaintiff and Class Members have a binding written contract with Meta.

95.     Plaintiff and Class Members' binding contract with Meta includes the Meta Terms of Service and Meta Data Policy.

96.     Meta's Terms of Service incorporates the Meta Data Policy. Meta states in its Terms of Service, "You can learn about how we collect and use your data in our Data Policy."

15

97.     Plaintiff and Class members performed all or substantially all of their contractual obligations.

98.     In the Meta Data Policy, Facebook defined Partners to include, "Advertisers, app developers, and publishers [who] can send us information through Meta Business Tools they use, including our social plug-ins (such as the Like button), Facebook Login, our APIs and SDKs, or the Meta pixel."

99.     In the Meta Data Policy, Facebook promised Plaintiff and Class Members that Facebook "require[s] each of these partners to have lawful rights to collect, use and share your data before providing any data to us."

100.    Facebook materially breached its contract with Plaintiff and Class Members by failing to require that hospitals and healthcare providers gain the necessary patient authorizations before sharing any patient protected health information with Facebook.

101.    Facebook materially breached its contract with Plaintiff and Class Members by failing to require that hospitals and medical providers submit records of the necessary patient consent to Facebook before sharing any patient protected health information with Facebook.

102.    As a direct and proximate result of Facebook's breach of contract, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services from Facebook that were less valuable than described in their contract with Facebook. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in value between that which was promised and Facebook's partial, deficient, and/or defective performance.

103.    Also, Plaintiff and Class Members were damaged in an amount at least equal to the amount that Facebook should have spent implementing controls to ensure that patient medical data was not provided to Facebook without the patients' consent.

104.    As a direct and proximate result of Facebook's breach of contract, Plaintiff and Class Members suffered an invasion of privacy. Plaintiff seeks compensatory damages for the invasion of their privacy.

105.    Plaintiff and Class Members are also entitled to, and seek, nominal damages.

106.    Accordingly, Plaintiff and Class Members have been injured as a result of Facebook's

breach of contract and are entitled to damages and/or restitution in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

(Asserted By Plaintiff Doe On Behalf Of The Class)

107.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

108.    Plaintiff and Class Members have a binding written contract with Meta.

109.    Plaintiff and Class Members' binding contract with Meta includes the Meta Terms of Service, Meta Data Policy, and Meta Cookie Policy.

110.    Plaintiff and Class members performed all or substantially all of their contractual obligations.

111.    Plaintiff and Class Members contract with Meta is subject to implied covenants of good faith and fair dealing that all parties would act in good faith and with reasonable efforts to perform their contractual duties (both explicit and fairly implied) and not to impair the rights of other parties to receive the rights, benefits, and reasonable expectations under the contract. These included the covenants that Facebook would act fairly and in good faith in carrying out its contractual obligation to "require each of these partners to have lawful rights to collect, use and share your data before providing any data to" Facebook.

112.    Facebook did not act in good faith and fair dealing to "require each of these partners to have lawful rights to collect, use and share your data before providing any data to" Facebook. Instead, Facebook took measures that frustrated and undercut this contractual right for Plaintiff and Class Members.

113.    Facebook failed to act in good faith and fair dealing, including by:

   a.    failing to implement a system that automatically suspended partners that transmitted patient medical data to Facebook from using the Meta Pixel;

   b.    encouraging healthcare providers to advertise on Facebook;

   c.    encouraging healthcare providers to install the Meta Pixel on their websites, even though the type of data collected by the Meta Pixel on a healthcare

17

provider website will foreseeably include the type of data that healthcare providers do not have the legal right to share; *and*

    d.    encouraging healthcare providers to create custom audiences and lookalike audiences based on data they have collected from the Meta Pixel, even though that data will foreseeably include the type of data that healthcare providers do not have the legal right to share.

114.    Facebook's actions unfairly interfered with Plaintiff and Class Members' rights under the parties' contract, including Plaintiff and Class Members' right to only have their data shared with Facebook by third-party partners if those third-party partners had the lawful right to share the data. Facebook thus deprived Plaintiff and the Class Members the benefits of their contract.

115.    As a direct and proximate result of Facebook's breach of the covenant of good faith and fair dealing, Plaintiff and Class Members did not receive the full benefit of the bargain, and instead received services from Facebook that were less valuable than described in their contract with Facebook. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in value between that which was promised and Facebook's partial, deficient, and/or defective performance.

116.    As a direct and proximate result of Facebook's breach of contract, Plaintiff and Class Members suffered an invasion of privacy. Plaintiff seeks compensatory damages for the invasion of their privacy.

117.    Plaintiff and Class Members are also entitled to, and seek, nominal damages.

118.    Accordingly, Plaintiff has been injured as a result of Facebook's breach of the covenant of good faith and fair dealing and are entitled to damages and/or restitution in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

### INVASION OF PRIVACY

CALIFORNIA CONSTIUTION, Art. 1, § 1

(Asserted By Plaintiff Doe On Behalf Of The Class)

119.    Plaintiff re-alleges and incorporates by reference herein all of the allegations

18

contained above.

120.    The California constitution's right to privacy confers a privacy right of action to Plaintiff and Class Members against private entities, such as Facebook.

121.    Article, 1, section 1 of the California Constitution states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, *and privacy*."

122.    California voters added the word "and privacy" to the California Constitution when they passed Proposition 11 in 1972. Proposition 11 is also known as the "Privacy Initiative" or "Right to Privacy Imitative."

123.    The argument to the voters in support of Proposition 11 stated:

> The right of privacy is the right to be left alone … It prevents government and business and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us. Fundamental to our privacy is the ability to control circulation of personal information. This is essential to social relationships and personal freedom.[19]

124.    Plaintiff and Class Members possess a legally protected interest in their patient medical data and in providing information to their healthcare providers (and receiving information from their healthcare providers) without Facebook's intrusion and observation. This legally protected interest is derived from multiple statutes and common law, including:

  a.    The California Constitution, which guarantees the right to privacy, including "the ability to control circulation of our personal information;"

---

[19] Ballot Pamp., Proposed Stats. and Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 7, 1972) p. 26.

CLASS ACTION COMPLAINT

b. Facebook's contractual promise that it would "require each of these partners to have lawful rights to … share your data before providing any data to" Facebook;

c. HIPAA;

d. The California Invasion of Privacy Act; and

e. The Wiretap Act.

125. Facebook invaded Plaintiff and Class Members privacy by intercepting and collecting communications transmitted between patients (including Plaintiff and Class Members) and their healthcare providers, including sensitive medical information, without getting consent from Plaintiff and Class Members.

126. Plaintiff and Class Members maintained a reasonable expectation of privacy when providing their patient medical data to their healthcare providers and when communicating with their healthcare providers online. Patient medical data is widely recognized by society as sensitive information that cannot be shared with third parties without the patients' consent. For example, public polling shows that, "[n]inety-seven percent of Americans believe that doctors, hospitals, labs and health technology systems should not be allowed to share or sell their sensitive health information without consent."[20]

127. Plaintiff and Class Members reasonable expectation of privacy was also supported by HIPAA's recognition that patient medical data is sensitive information.

128. Plaintiff and Class Members also maintained a reasonable expectation of privacy that Facebook would not collect data from Plaintiff and Class Members' communications with their healthcare providers because Facebook affirmatively promised users (including Plaintiff and Class Members) that it would require its partners to only share data with Facebook that could be lawfully shared.

129. Plaintiff and Class Members also maintained a reasonable expectation of privacy

---

[20] *Poll: Huge majorities wants control over health info,* Healthcare Finance, https://www.healthcarefinancenews.com/news/poll-huge-majorities-want-control-over-health-info (last visited Aug. 11, 2022)

CLASS ACTION COMPLAINT

under the circumstances because Plaintiff expected that Facebook would not violate state criminal laws, such as the California Invasion of Privacy Act, which prohibited Facebook from intercepting Plaintiff and Class Members' communications with healthcare providers without the consent of both parties to the communication (the patient and the healthcare provider).

130. Facebook's actions, as described above, constituted a serious invasion of privacy that was an egregious breach of social norms, such that the breach was highly offensive to a reasonable person because:

a. the invasion of privacy occurred in a highly sensitive setting – patients' communications with their healthcare providers;

b. Facebook had no legitimate objective or motive in invading Plaintiff and Class Members' privacy;

c. Facebook violated multiple laws by invading Plaintiff and Class Members' privacy, including the California Invasion of Privacy Act and Wiretap Act;

d. Facebook deprived Plaintiff and Class Members of the ability to control circulation of their personal medical information; and

e. Facebook's actions are also unacceptable as a matter of public policy because they undermine the relationship between patients and their healthcare providers.

131. As a direct and proximate result of Facebook's invasion of their privacy, Plaintiff and Class Members were injured and suffered damages. Plaintiff and Class Members seek appropriate relief for that injury, including compensatory damages, restitution, disgorgement, punitive damages, and any other relief that the Court may deem just and proper.

## FOURTH CAUSE OF ACTION

### INTRUSION UPON SECLUSION

(Asserted By Plaintiff Doe On Behalf Of The Class)

132. Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

21

133.    Under California common law, Plaintiff and Class Members may assert a claim for intrusion upon seclusion.

134.    Facebook intentionally intruded upon Plaintiff and Class Members' seclusion by intercepting and collecting communications transmitted between patients (including Plaintiff and Class Members) and their healthcare providers, including sensitive medical information, without getting consent from Plaintiff and Class Members.

135.    Plaintiff and Class Members maintained a reasonable expectation of privacy when providing their patient medical data to their healthcare providers and when communicating with their healthcare providers online. Patient medical data is widely recognized by society as sensitive information that cannot be shared with third parties without the patients' consent. For example, public polling shows that, "[n]inety-seven percent of Americans believe that doctors, hospitals, labs and health technology systems should not be allowed to share or sell their sensitive health information without consent."[21]

136.    Plaintiff and Class Members' reasonable expectation of privacy was also supported by HIPAA's recognition that patient medical data is sensitive information.

137.    Plaintiff and Class Members also maintained a reasonable expectation of privacy that Facebook would not collect data from Plaintiff and Class Members' communications with their healthcare providers because Facebook affirmatively promised users (including Plaintiff and Class Members) that it would require its partners to only share data with Facebook that could be lawfully shared.

138.    Plaintiff and Class Members also maintained a reasonable expectation of privacy under the circumstances because Plaintiff expected that Facebook would not violate state criminal laws, such as the California Invasion of Privacy Act, which prohibited Facebook from intercepting Plaintiff and Class Members' communications with healthcare providers without the consent of both parties to the communication (the patient and the healthcare provider).

---

[21] *Poll: Huge majorities wants control over health info,* Healthcare Finance, https://www.healthcarefinancenews.com/news/poll-huge-majorities-want-control-over-health-info (last visited Aug. 11, 2022)

CLASS ACTION COMPLAINT

139.    Facebook's actions, as described above, constituted a serious invasion of privacy that was an egregious breach of social norms, such that the breach was highly offensive to a reasonable person because:

  a. the invasion of privacy occurred in a highly sensitive setting – patients' communications with their healthcare providers;

  b. Facebook had no legitimate objective or motive in invading Plaintiff and Class Members' privacy;

  c. Facebook violated multiple laws by invading Plaintiff and Class Members' privacy, including the California Invasion of Privacy Act and Wiretap Act;

  d. Facebook deprived Plaintiff and Class Members of the ability to control circulation of their personal medical information; and

  e. Facebook's actions are also unacceptable as a matter of public policy because they undermine the relationship between patients and their healthcare providers.

140.    As a direct and proximate result of Facebook's invasion of their privacy, Plaintiff and Class Members were injured and suffered damages. Plaintiff and Class Members seek appropriate relief for that injury, including compensatory damages, restitution, disgorgement, punitive damages, and any other relief that the Court may deem just and proper.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT ("CIPA"),

CAL. PENAL CODE §§ 630, *et seq.*

(Asserted By Plaintiff Doe On Behalf Of The Class)

141.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

142.    The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.

143.    California Penal Code § 631(a) prohibits the interception of "any message, report, or

23

communication," stating:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section…

144.    California Penal Code § 632(a) prohibits eavesdropping upon or recording any "confidential communications":

> A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio…

CLASS ACTION COMPLAINT

145.    California Penal Code § 637.2 provides a private right of action for violations of CIPA so that "[a] person who has been injured by a violation of [CIPA] may bring an action against the person who committed the violation…"

146.    Facebook has its principal place of business in California, and California law governs its relationship with its users.

147.    Facebook violated section 631 by intercepting communications between Plaintiff (and Class Members) and their healthcare providers through the Meta Pixel, including communications containing medical appointment scheduling and other medical data.

148.    Through the Meta Pixel, Facebook willfully learned or attempted to learn the contents of the communications between Plaintiff (and Class Members) and their healthcare providers.

149.    Facebook's interception of Plaintiff's (and Class Members') communications with their healthcare providers through the Meta Pixel was intentional. Evidence of Facebook's intent includes: (a) Facebook encouraging health care providers to install the Meta Pixel on their websites; (b) Facebook encouraging health care providers to create custom audiences and lookalike audiences based on data they have collected from the Meta Pixel; and (c) Facebook's failure to implement a system that automatically suspended health care providers that transmitted patient medical data to Facebook using the Meta Pixel.

150.    Facebook violated section 632 by using the Meta Pixel to eavesdrop upon and record confidential communications between Plaintiff (and Class Members) and their healthcare providers, including communications containing medical appointment scheduling and other medical data.

151.    The data collected by Facebook constituted confidential communications because Plaintiff and Class Members had objectively reasonable expectations of privacy when communicating with their healthcare providers.

152.    Under sections 631 and 632, a defendant must obtain consent from "all parties" to the communication.

153.    Plaintiff and Class Members did not provide consent to Facebook to intercept, eavesdrop, or record their communications with their healthcare providers (including medical appointment scheduling and other medical data).

154.     Plaintiff and Class Members have been injured due to Facebook's violations of CIPA, including, but not limited to, violation of their rights to privacy.

155.     Pursuant to California Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of California Penal Code §§ 631 and 632, and each seek damages for the greater of $5,000 per violation (in statutory damages, as specified by the statute) or three times the amount of their actual damages, as well injunctive relief, and any other relief authorized by the statute.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE FEDERAL WIRETAP ACT

18 U.S.C. § 2510, *et. seq.*

(Asserted By Plaintiff Doe On Behalf Of The Class)

156.     Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

157.     The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, prohibits the intentional interception of the contents of any wire, oral, or electronic communication through the use of a device. 18 U.S.C. § 2511.

158.     The Wiretap Act protects both the sending and receipt of communications.

159.     18 U.S.C. § 2520(a) provides a private right of action to "any person whose wire, oral, or electronic communications is intercepted, disclosed, or intentionally in violation" of the Wiretap Act.

160.     Facebook violated the Wiretap Act by intercepting communications between Plaintiff (and Class Members) and their healthcare providers through the Meta Pixel, including communications containing medical appointment scheduling and other medical data. 18 U.S.C. § 2511(1)(a),(b).

161.     Facebook also violated the Wiretap Act by intentionally using the contents of the intercepted communications to create target audiences for advertisers, including custom audience audiences and lookalike audiences. 18 U.S.C. § 2511(1)(c).

162.    Facebook's interception of, and use of, Plaintiff's (and Class Members') communications with their healthcare providers through the Meta Pixel was intentional. Evidence of Facebook's intent includes: (a) Facebook encouraging health care providers to install the Meta Pixel on their websites; (b) Facebook encouraging health care providers to create custom audiences and lookalike audiences based on data they have collected from the Meta Pixel; and (c) Facebook's failure to implement a system that automatically suspended health care providers that transmitted patient medical data to Facebook using the Meta Pixel.

163.    Facebook's interception of communications between Plaintiff (and Class Members) with their healthcare providers was done contemporaneously with Plaintiff and Class Members' sending and receiving those communications.

164.    Facebooks intercepted the "contents" of communications, including the Plaintiff's communications relating to scheduling Plaintiff's appointments with her healthcare provider and the type of medical care that Plaintiff received. Facebook intercepted the "contents" of Class Members' communications with their healthcare providers, including communications relating to scheduling Class Members appointments with their healthcare providers, the type of medical care that the Class Member received, the Class Members' medications, allergic reactions, and other details about their doctor's appointments.

165.    To intercept communications between Plaintiff and Class Members and their healthcare providers, Facebook used "devices" within the meaning of § 2510(5), including Facebook Business Tool source code and Facebook Pixel source code, the healthcare providers' websites, Plaintiff and Class Members' browsers, and Facebook's web servers.

166.    Facebook was not an authorized party to the communications between Plaintiff (and Class Members) and their healthcare providers.

167.    The communications between the Plaintiff (and Class Members) and their health care providers were simultaneous to, but also separate from, the channel through which Facebook acquired the communications.

168.    Plaintiff and Class Members did not provide consent to Facebook intercepting their communications with their healthcare providers (including medical appointment scheduling and

other medical data).

169.    Facebook had a tortious and criminal purpose in intercepting and using the contents of Plaintiff and Class Members' communications with their healthcare providers. Facebook's actions were in violation of California's constitutional right to privacy, CIPA, and HIPAA, and intruded on Plaintiff and Class Members' seclusion.

170.    Pursuant to 18 U.S.C. § 2520, Plaintiff and Class Members seek: (a) preliminary and other equitable or declaratory relief as may be appropriate, including injunctive relief; (b) monetary damages for *greater of* (i) the sum of the actual damages suffered by the plaintiff and any profits made by Facebook as a result of the violation or (ii) statutory damages of whichever is greater of $100 a day for each violation or $10,000; and (c) reasonable attorney's fee and other litigation costs reasonably incurred, and any other relief authorized by the statute.

## SEVENTH CAUSE OF ACTION

**VIOLATION OF THE COMPREHENSIVE COMPUTER ACCESS AND FRAUD ACT ("CDAFA")**

Cal. Penal Code § 502, *et. seq.*

(Asserted By Plaintiff Doe On Behalf Of The Class)

171.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

172.    The CDAFA was enacted to provide protection from "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a).

173.    Facebook violated Cal. Penal Code § 502(c)(1) by knowingly accessing and without permission using data, computer systems, and computer networks to wrongfully obtain money and data.  Facebook knowingly accessed and without permission used Plaintiff and Class Members' data, including data that Plaintiff and Class Members submitted through their healthcare providers' appointment scheduling page and patient portals, to wrongfully obtain medical data and money.

174.    Facebook violated Cal. Penal Code § 502(c)(2) by knowingly accessing and without

28

permission taking, copying, and/or making use of data from a computer system and computer network. Facebook knowingly and without permission accessed, took, and copied medical data from electronic communications between Plaintiff (and Class Members) and their healthcare providers.

175.   As a direct and proximate result of Facebook's unlawful conduct within the meaning of Cal. Penal Code § 502, Plaintiff and Class Members suffered injury, loss, and damages, including that Plaintiff and Class Members suffered an invasion of privacy.

176.   Pursuant to Cal. Penal Code § 502(e)(1), Plaintiff and Class Members (who all owned the knowingly accessed data) bring an action against Facebook for compensatory damages, injunctive relief, other equitable relief, and any other relief that the Court may deem just and proper.

177.   Pursuant to Cal. Penal Code § 502(e)(2), Plaintiff and Class Members also ask the Court award them their reasonable attorney's fees.

178.   Pursuant to Cal. Penal Code § 502(e)(4), Plaintiff and Class Members are also entitled to punitive or exemplary damages because Facebook's violations are willful, and upon information and belief, Facebook is guilty of oppression, fraud, or malice as defined in Cal. Civil Code. § 3294.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

Cal. Bus. & Prof. Code § 17200, *Et Seq.*

(Asserted By Plaintiff Doe On Behalf Of The Class)

179.   Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

180.   This claim is plead in the alternative.

181.   Plaintiff alleges there is no adequate remedy at law.

182.   "Unfair competition" is defined to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Business & Professions Code §§ 17500, *et. seq.*]"

183.   Facebook engaged in "unlawful" business acts and/or practices by intentionally

29

intercepting communications between Plaintiff and Class Members and their healthcare providers, as described above. Facebook's actions violated the Federal Wiretap Act, the California Invasion of Privacy Act, and California's constitutional right to privacy.

184.    Plaintiff and Class Members were injured as a result of Facebook's unlawful acts, including because Plaintiff and Class Members suffered an invasion of privacy.

185.    Plaintiff and Class Members seek restitution for monies wrongfully obtained, injunctive relief, and any other relief allowable under California Business & Professions Code § 17203, including, but not limited to, enjoining Defendant from continuing to engage in its unlawful conduct as alleged.


**NINTH CAUSE OF ACTION**

**QUANTUM MERUIT TO RECOVER SUMS HAD BY UNJUST ENRICHMENT**

(Asserted By Plaintiff Doe On Behalf Of The Class)

186.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained above.

187.    This claim is plead in the plead in the alternative to the claims for breach of contract.

188.    Plaintiff alleges there is no adequate remedy at law.

189.    Plaintiff brings this count in quasi contract on behalf of themselves and the Class in order to pursue restitution based on Facebook's unjust enrichment.

190.    Facebook has unjustly received and retained monetary benefits from Plaintiff and Class Members by profiting off the use of their medical data under unjust circumstances such that inequity has resulted.

191.    Facebook knowingly obtained benefits from Plaintiff as alleged herein under circumstances such that it would be inequitable and unjust for Facebook to retain them.

192.    Facebook has been knowingly enriched by revenues they received from advertisers who used medical data that Facebook unjustly and illegally obtained to target their advertisements, including custom audience audiences and lookalike audiences.

193.    Facebook has been knowing enriched by retaining profits should have spent

implementing controls to ensure that patient medical data was not provided to Facebook without the patients' consent.

194.     Facebook failed to obtain consent from Plaintiff and Class Members to intercept their communications with their healthcare providers, or to use medical data and information contained in those communications.

195.     Thus, Facebook will be unjustly enriched if it is permitted to retain the benefits derived from the authorized and impermissible collection and usage of Plaintiff and Class Members' medical data.

196.     Plaintiff and Class Members are therefore entitled to a restitution or a constructive trust upon the monies that Facebook derived from its unjust conduct, including (1) revenues Facebook received from advertisers who targeted their advertisements using medical data that Facebook unjustly and illegally obtained, (2) profits that Facebook retained that should have spent implementing controls to ensure that patient medical data was not provided to Facebook without the patients' consent, or (3) any other amount that the court may determine is equitable.


## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Doe, on behalf of herself and the Class, seek the following relief:

A.     An order certifying this action as a class action under Fed. R. Civ. P. 23(b)(2) and/or (b)(2), defining the Class as requested herein, appointing Cohen Milstein Sellers & Toll PLLC, as Class Counsel, and finding that Plaintiff Doe is a proper representative of the Class requested herein.

B.     Damages, including compensatory damages, actual damages, and benefit-of-the-bargain damages, and nominal damages.

C.     Restitution.

D.     Disgorgement to Plaintiff and the Class of all monies Facebook wrongfully obtained and retained.

E.     Punitive and Exemplary Damages.

F.     Statutory Damages, as provided by law.

G.     Attorneys' fees.

1        H.       Reasonable costs incurred in connection with this action, including expert witness

2   fees, and other costs as provided by law.

3        I.        Prejudgment interest commencing on the date of the legal violations and continuing

4   through the date of the entry of judgment in this action.

5        J.        Equitable and declaratory relief.

6        K.       Injunctive relief.

7        L.        Any other relief available under the claims brought by Plaintiff.

8        M.      Granting such other relief as the Court deems proper.

9                          **JURY TRIAL DEMAND**

10       Plaintiff hereby request a jury trial for all issues so triable.

11

12   DATED:      August 15, 2022         Respectfully submitted,

13                                    By: */s/ Michael Kipp Mueller*

14                                  GEOFFREY GRABER (SBN 211547)
                               **COHEN MILSTEIN SELLERS & TOLL PLLC**

15                                  1100 New York Ave. NW, Fifth Floor
                               Washington, DC 20005

16                                  Telephone: (202) 408-4600
                               Facsimile: (202) 408-4699

17                                  ggraber@cohenmilstein.com

18                                  ERIC KAFKA (*pro hac vice* forthcoming)
                               **COHEN MILSTEIN SELLERS & TOLL PLLC**

19                                  88 Pine Street, 14th Floor
                               New York, NY 10005

20                                  Telephone: (212) 838-7797
                               Facsimile: (212) 838-7745

21                                  ekafka@cohenmilstein.com

22                                  JOSEPH P. BRENT (SBN 214459)
                               MICHAEL KIPP MUELLER (SBN 299984)

23                                  **BRENT & FIOL, LLP**
                               117 E. Colorado Blvd, Suite 465

24                                  Pasadena, CA 91105
                               Telephone: (626) 240-4850

25                                  Facsimile: (415) 373-4420
                               jbrent@brentfiol.com

26                                  kmueller@brentfiol.com

27                                  ***Attorneys for Plaintiff and the Putative Class***

28

CLASS ACTION COMPLAINT